LARRY L. BARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RespondentBard v. CommissionerDocket No. 13125-91United States Tax CourtT.C. Memo 1993-105; 1993 Tax Ct. Memo LEXIS 106; 65 T.C.M. (CCH) 2144; March 24, 1993, Filed *106 Larry L. Bard, pro se. For respondent: James R. Rich. PARRPARRMEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency and additions to tax for 1987 in the following amounts: Additions to TaxDeficiencySec. 6653(b)(1)(A)Sec. 6653(b)(1)(B)Sec. 6661$ 15,299$ 11,474*$ 3,825All section references are to the Internal Revenue Code in effect for the tax year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Petitioner concedes the deficiency. The remaining issues for trial are whether petitioner is liable for the additions to tax for fraud and substantial understatement of income. By amendment to the answer, respondent alleges alternatively that if petitioner is not liable for the addition to tax for fraud, he is liable for the addition to tax for negligence under section 6653(a)(1)(A) and (B) for 1987. Although petitioner's wife Karen A. Bard*107 filed a joint return with petitioner, and respondent determined the deficiency and additions to tax against her as well, she is not a party to this case. FINDINGS OF FACT The findings of fact are based upon the stipulation of the parties, undenied pleadings, and testimony at trial. When the petition was filed petitioner resided in Raleigh, North Carolina. During the taxable year 1987, petitioner worked for Leardata Info-Services, Inc. (Leardata). For his services, Leardata paid petitioner $ 55,268, of which $ 7,862 was in the form of wages and $ 47,406 was in the form of consulting fees. Leardata provided petitioner and respondent with Form W-2 reflecting wages of $ 7,862 during the year 1987. Respondent also received a copy of Form 1099 from Leardata, reflecting payment to petitioner of $ 47,406 in 1987. Petitioner denies he received the Form 1099, but admits he received the income. On his 1987 income tax return petitioner reported only the $ 7,862 in wages, and knowingly failed to report the $ 47,406 in 1099 income. Petitioner also failed to report income and losses (which exceeded income) from his Amway Distributorship on his 1987 income tax return. Petitioner timely*108 filed his joint income tax return when his wife was out of town. Unlike prior years, he did not show his wife the return before mailing it to the Internal Revenue Service. Also, unlike in prior years, he signed her name to the return. Petitioner testified, and we believe, that if his wife had seen the return she would have realized his failure to report the $ 47,406. Petitioner has made several, somewhat inconsistent, explanations of his failure to report the income. In his trial memorandum, petitioner stated: When I completed my 1987 return I did so with the information I had and did it to the best of my knowledge. All information on the return was true and factual. It was almost a year later before I realized that I had missed some income. [Emphasis added.]A second explanation, however, is embedded in petitioner's reply to respondent's answer. Respondent alleged that petitioner failed to report income and expenses with regard to the Amway Distributorship because he was afraid it would trigger an audit. In his reply, paragraph 6g, petitioner denies this. Petitioner states: the business produced a loss which in turn would have reduces [sic] his tax liability*109 even further and he knew he would eventually have the [sic] pay the taxes on the 1099 income so he did not want to reduce his taxes further at this time knowing he would have to pay later. This loss would have been reported on the amended return. * * *" [Emphasis added.]Petitioner thus argued in his reply to respondent's answer that at the time he filed his 1987 return he knew he would have to file an amended return reporting the omitted income. This is inconsistent with petitioner's allegation that when he filed the return he was unaware of the omitted 1099 income. At trial, petitioner reverted to a version of his original story. He asserted that when he got all his papers together to prepare his return, he simply used them to look at "the bottom line", i.e., how much he would have to pay or would receive in a tax refund. He claims since he had only the Form W-2, he forgot about the other income. We find this explanation unlikely and implausible. When a third, and probably more realistic explanation emerged during audit, petitioner stated he was simply looking for compassion regarding the fraud penalty. He told the auditor his wife was not aware of the*110 audit and that he wanted to settle the case without her finding out about it. In a subsequent conference with the group manager, petitioner admitted that he knew what he was doing when he did not report the income, but felt that it would give him time to come up with the money. In an appeals conference held on January 19, 1991, petitioner, for the first time, claimed he had written a letter to respondent disclosing the omitted income from his 1987 income tax return. Petitioner alleged that the letter was dated March 24, 1989, and had been enclosed with his reply to a letter concerning his 1986 taxes which were then (1989) being audited. The entire letter is reproduced below: 3/24/89 IRS, Enclosed is my reply to your letter concerning my 1986 taxes. I've enclosed a copy of that letter. Also, I have a concern about my 1987 taxes that I need your help with. When I submitted my '87 return I didn't have a 1099 from Leardata showing my '87 earnings. During that year I had both W2 and 1099 earnings, I received a W2 but the 1099 was missing. When I completed my return, I completed it with the information I had and omitted the 1099 income (approximately $ 40,000). I know*111 I need to pay these taxes and I would like to get this resolved immediately in order to avoid penalties and interest. Tell me what I need to do. Thank, [sic] Larry L. Bard 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Respondent denies ever having received this letter until petitioner produced it on January 19, 1991, as a defense to the fraud addition. Petitioner also attached a copy of the letter and what purported to be a signed receipt for it to his reply filed in this case, in support of paragraph 6i. The postal receipt is dated March 27, 1989, Austin, Texas, on an envelope addressed to Chief, Taxpayer's Assistance Section, IRS Center, Austin, Texas 73301. Indeed, the parties agree that respondent received one letter dated March 24, 1989 from petitioner. In that letter petitioner complained about Social Security taxes and enclosed a copy of a notice from the Service Center saying petitioners owed an additional $ 6,315.53 on their 1986 income taxes for failure to pay self-employment taxes in 1986. A copy of the envelope attached to that letter shows it was sent by registered or certified mail and a return receipt was requested and returned to petitioner. Apart from petitioner's word, there*112 is no evidence that the letter regarding omitted 1099 income was enclosed therein. OPINION The burden of proof with respect to the fraud issue is upon respondent to prove, by clear and convincing evidence, that some part of the underpayment of tax was due to fraud with an intent to evade tax. Sec. 7454(a); Rule 142(a); . This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. ; , affg. . The existence of fraud is a question of fact to be resolved upon consideration of the entire record. , affd. without published opinion . Fraud will never be presumed. .*113 Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ; . Certain badges of fraud were summarized by the Court of Appeals for the Ninth Circuit in , affg. . Some of these badges are present here, such as understatement of income and implausible or inconsistent explanations. However, most of the other commonly recognized badges of fraud are not here present. Petitioner did not fail to keep records or fail to file. Although he had a substantial understatement of income in 1987, his other returns have apparently been timely and accurate, except for the failure to include a Form SE for self-employment tax in 1986. There was no concealing of assets or activities. Once his audit began petitioner promptly conceded the deficiency. We do*114 not condone petitioner's understatement, nor his self-serving and changing explanations. However, we do not believe respondent has proven by clear and convincing evidence that petitioner intended to evade taxes. We believe it is more likely that he intended to postpone the payment of taxes for 1987 until he could get the money together, at which time he would file an amended return. Petitioner has argued that, when responding to a letter concerning his 1986 taxes, he included a note explaining that he has missed some income in 1987 and inquired what he should do. He argues, "If I were going to cheat I would not have explained the missing income." He further states that having worked in the computer industry for 27 years (including 13 years for the Federal government) he understands that he could not expect to get away with omitting income on a tax return that has already been reported to the Internal Revenue Service by his employer. While we are not totally convinced that petitioner did in fact include the letter concerning 1987 with the letter concerning 1986 Social Security mailed to IRS on March 24, 1989, we are likewise not completely convinced that the letter was not included. *115 Although the question is close, we hold that respondent has not met the burden of proof on the issue of fraud. However, it is abundantly clear that respondent has met her burden of proving petitioner was negligent. We believe petitioner knew he had earned the additional income, and was simply ignoring it in order to buy time to file an amended return. This is an intentional disregard of the rules or regulations. We therefore hold that petitioner is liable for the addition to tax pursuant to section 6653(a)(1)(A) and (B). The remaining issue is whether petitioner is liable for the addition to tax pursuant to section 6661. This section provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Petitioner presented no defenses to respondent's assertion of the section 6661 addition to tax, and we hold that he is liable for it. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes*. 50 percent of the interest due on $ 15,299.↩